## In re NATIONAL STUDENT MARKETING LITIGATION.

### M.D.L. Docket No. 105.

United States District Court,
District of Columbia.

July 17, 1981.

John W. Castles, III, Lord, Day & Lord, New York City, for Lord Bissell & Brook; Max E. Meyer, and Louis F. Schauer.

Edwin J. Wesely, Winthrop, Stimson, Putnam & Roberts, New York City, Daniel A. Rezneck, Lawrence A. Schneider, Arnold & Porter, Washington, D. C., for White & Case and Marion Jay Epley, III.

William E. Hegarty, Mathias Mone, Cahill, Gordon & Reindel, New York City, for Peat, Marwick, Mitchell & Company, Anthony M. Natelli, and Joseph Scansaroli.

George P. Michaely, Jr., Shaw, Pittman, Potts & Trowbridge, Washington, D. C., for Donald A. Fergusson and Robert A. Fergusson.

Sidney Dickstein, Dickstein, Shapiro & Morin, Washington, D. C., for Roger O. Walther.

John J. Cooleen, King & Nordlinger, Washington, D. C., for Louis W. Biegler and The Biegler Foundation.

Franklin M. Schultz, Reavis & McGrath, Washington, D. C., for James F. Joy.

## MEMORANDUM AND ORDER

BARRINGTON D. PARKER, District Judge:

The issue now presented for determination by the Court is whether a non-settling defendant charged with a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), has an implied right to assert a cross-claim for contribution against a settling defendant. Under prevailing authority, the Court concludes that such a right exists.

### I.

In 1970, a group of shareholders brought a class action suit seeking damages against National Student Marketing Corp., the law firm of Lord Bissell & Brook (Lord Bissell or LBB), the Peat Marwick & Mitchell accounting firm, the law firm of White & Case and various other defendants. The class action complaint alleged violations of various provisions of the federal securities law and common law fraud. Later, on July

26, 1973, an order was entered providing that each defendant was deemed to have asserted cross-claims against all other defendants for such sharing of liability in the nature of contribution and indemnification as provided under the Securities Act of 1933 and the Securities Exchange Act of 1934, as well as by state statutory and common law.

On October 26, 1979, the Lord Bissell & Brook defendants entered into a settlement with the plaintiff class. That settlement was approved by the Court on June 5, 1980. They have now moved to dismiss the cross-claims for contribution asserted against them by the remaining non-settling defendants.[1] By dismissal of the cross-claims, Lord Bissell seeks to avoid further involvement in this protracted litigation. The cross-claims among these settling defendants were resolved by the agreement. Any cross-claims by the twenty-three defendants, who were dismissed by the plaintiff class on April 20, 1981, have also been eliminated from these actions.[2] Thus, the only cross-claims remaining against the Lord Bissell defendants are the cross-claims of the non-settling defendants who have not been dismissed.

The Lord Bissell agreement expressly provided that it was without prejudice to the rights of any defendants other than the LBB defendants. The plaintiff class agreed to indemnify Lord Bissell against all claims of every nature and description which might be asserted by any non-settling defendant. Similarly, this Court's judgment which ratified the settlement, provided that it was without prejudice to any and all cross-claims. The Lord Bissell defendants did not suggest in their application to the Court for approval of the settlement that such actions would effect dismissal of cross-claims asserted by the remaining defendants. Additionally, at the May 28, 1980 hearing on the settlement, counsel for Lord

Bissell acknowledged that the cross-claims required their continued participation in this litigation. At page 56 of the transcript of that hearing, Mr. Castle, LBB's counsel, stated:

> Now, the only way that our defendants, settling defendants, have any continuing connection, if you will, not concern, connection with this case is that, if a non-settling defendant asserts a cross-claim against us then we must look to the plaintiff's class for indemnification against the cross-claim, and the plaintiffs are obliged to indemnify us to the extent that they recover from the cross-claiming defendant, and that is it.

Consequently, the LBB defendants entered into settlement fully aware that they would still be responsible for defending against any future cross-claims.

## II.

Lord Bissell now seeks dismissal of these cross-claims and advances two theories. First, they argue that the law of the transferor court, the Southern District of New York, governs,[3] and that the case law of the Second Circuit, *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 540 F.2d 27 (2d Cir. 1976), does not provide a right of contribution under § 10(b) of the 1934 Act. They acknowledge that two recent Fifth and Ninth Circuit opinions recognized a federal contribution right under the securities laws but urge that they are not controlling here. *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. 1981); *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672 (9th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). The second theory, advanced by LBB's counsel and proffered for the first time at the July 1, 1981 hearing, was premised on two recently decided

---

**1.** The present motion is urged by the Lord Bissell law firm, as well as Max Meyer and Louis Schauer, two partners in the firm.

**2.** On April 20, 1981, the plaintiff class filed a notice dismissing twenty-three defendants from this action. None of those individuals had been served nor had any appeared in this litigation.

**3.** The substantive law of the transferor forum is to be applied after transfer for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In Re Plumbing Fixtures Litigation*, 342 F.Supp. 756, 758 (Jud.Pan.Mult.Lit.1972).

Supreme Court cases. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, —— U.S. ——, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *Northwest Airlines, Inc. v. Transport Workers Union*, —— U.S. ——, 101 S.Ct. 1571, 67 L.Ed.2d 75 (1981). They argue from those decisions that no federal right of contribution may ever be implied under § 10(b). While those cases did not involve federal securities law, LBB argues nonetheless that they are persuasive and applicable. Counsel contends that those rulings are clear indications that the Supreme Court relies heavily, if not solely, on Congressional intent in analyzing implied contribution rights and since no right of contribution was provided in § 10(b), the federal courts have no power to imply such a remedy. Indeed, Lord Bissell argues that the two recent cases overrule any previous implication of a right of contribution under § 10(b).

## A.

The several arguments of Lord Bissell are interesting but upon close analysis are not convincing and are unacceptable. First, they misread the ruling in *Herzfeld*. The Second Circuit held that under the particular set of facts there presented, the non-settling defendants were not entitled to contribution from the settling defendants. The central aspect and the one this Court believes was controlling, was that the settling defendant had agreed to pay more than half of the amount of damages the plaintiff had incurred. Therefore, the settling defendant had already paid more than its share of any potential liability. The detailed analysis the Court engaged in to determine if the damages had been apportioned fairly would have been unnecessary if the holding was, as the LBB defendants suggest, that there was no implied right of contribution under § 10(b).

*Herzfeld* has been regarded as a limited holding, that when a settling defendant has paid more than his pro rata share of damages, a non-settling defendant may not be entitled to recovery. *Laventhol*, 637 F.2d at 675; *accord, Professional Beauty Supply v. National Beauty Supply*, 594 F.2d 1179,

1182 n. 4 (8th Cir. 1979). One commentator explained:

> The clear implication of *Herzfeld* ... is ... that, if with hindsight a court determines that the settlement sum did not equal settlor's share of the judgment, the settlor will be required to contribute the difference between the settlement payment and the subsequently adjudged share of damages.

Adamski, "Contribution and Settlement in Multiparty Actions Under Rule 10b–5," 66 *Iowa L.Rev.* 533, 546 (1981). Another analysis of *Herzfeld* explained:

> At least in the Second Circuit it appears to be the rule that settling defendants who contribute their pro rata obligations may remove themselves from further involvement with the litigation. Unfortunately whether or not the settlement is truly pro rata cannot be determined until after the fact, i. e. after a final judgment in the main litigation is obtained.

Fischer, "Contribution in 10b–5 Actions," 33 *Bus. Lawyer* 1821, 1832 (1978).

Other circuits considering this issue have recognized a right to contribution under the securities laws. In *Laventhol*, the Ninth Circuit rejected appellee's attempt to avoid liability for contribution when the panel observed at 675:

> That the settlement eliminated [settling defendants'] liability to the plaintiff class does not affect their liability in contribution to appellants who were not parties to that settlement, nor does the settlement affect the identity of payment as between these cross-defendants.

Likewise, the Fifth Circuit in *Huddleston*, 640 F.2d at 559, concluded that a "rule permitting contribution provides an equitable result that sufficiently satisfies the objective of deterrence under securities laws."

In *Heizer Corp. v. Ross*, 601 F.2d 330 (7th Cir. 1979), a unanimous appellate panel reversed the lower court's holding that an implied right of contribution could not be separately brought subsequent to judgment creating the securities laws liability. That court found that once a private remedy is implied under the securities laws, a right of

contribution should be implied to achieve a more equal distribution of justice.

> This result is buttressed by the fact that of the seven express civil remedies provided in the Securities Act of 1933 and the Securities Exchange Act of 1934, three of those provide expressly for contribution. This indicates that when it occurred to Congress to do so, it expressed its desire that contribution be available among joint securities tortfeasors. Inasmuch as three specific liability provisions include the remedy of contribution, that ancillary remedy should be implied when the remedy itself has been implied as under Section 10(b) of the 1934 Act and Rule 10(b)–5. [footnotes omitted].

601 F.2d at 332. Defendants' attempt to distinguish that case because it was an independent cause of action as opposed to a cross-claim, counter-claim or third-party claim was rejected. According, to the Seventh Circuit, a remedy of contribution was a substantive right not dependent upon the particular procedure involved.

Several trial courts have also recognized the right to contribution in 10b–5 actions. *E. g., Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1185 (S.D.N.Y.1979); *McLean v. Alexander,* 449 F.Supp. 1251, 1265–67 (D.Del.1978), *rev'd on other grounds,* 599 F.2d 1190 (3rd Cir. 1979); *Altman v. Liberty Equities Corp.,* 54 F.R.D. 620 (S.D.N.Y.1972). In *Globus Inc. v. Law Research Service, Inc.,* 318 F.Supp. 955 (S.D.N.Y.1970), the court found that where defendants were found jointly and severally liable to plaintiff, one defendant, who paid plaintiffs the full amount of judgment, was entitled to contribution against the two remaining defendants. Both the result and reasoning of the trial judge were affirmed without an opinion. 442 F.2d 1346 (2d Cir. 1970), *cert. denied,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971).

In *Altman,* Judge Tyler of the Southern District of New York ruled that as a matter of federal law, there can be no doubt that non-settling defendants have a right to seek contribution from settling defendants. 54 F.R.D. at 623–24. There, the settling defendants attempted to insert an injunction in the settlement agreement barring the non-settling defendants from seeking contribution or indemnification. In rejecting defendants' attempt to escape liability under New York law, he found federal law to be controlling. Citing *Globus,* Judge Tyler wrote:

> The effect of such a bar in a partial settlement is very nearly a question of first impression in class actions under the federal securities laws. Thus, while there is a policy in favor of settlement in class actions, ... there can be no doubt that the non-settling defendants have a right to make cross-claims, Rule 13(g) F.R.Civ.P., and to seek contribution in cases brought under § 10(b) of the Securities & Exchange Act. [citations omitted].

54 F.R.D. at 623. Allowing the proposed bar was considered to be prejudicial to the interest of the non-settling defendants, notwithstanding the policy consideration in favor of settlement and the possible effect on the plaintiff class's partial recovery.

Finally, commentators who have written extensively on the appropriateness and the effects of a contribution right under the securities laws, do not question the fact that courts have consistently implied such a right under § 10(b). *See* Adamski, *supra,* 66 *Iowa L.Rev.* at 539; Fischer, *supra,* 33 *Bus. Lawyer* at 1826–31. Lord Bissell's argument that no right of contribution exists under New York law is without merit.

### B.

Second, Lord Bissell's reliance on the two recent Supreme Court cases is misplaced. The *Texas Industries* case dealt with the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 15. Although the Supreme Court found that there is no basis in federal statutory law for allowing federal courts to fashion the right of contribution urged by the defendant in the antitrust area, the Court dealt only with those two statutory schemes. In a footnote, Chief Justice Burger acknowledged that any finding of a right to contribution under federal

securities laws did not affect the Court's analysis in the antitrust area:

> That Congress knows how to define a right to contribution is shown by the express actions for contribution under § 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f), and §§ 9(e) and 18(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(e), 78r(b). Some courts have extrapolated from these provisions that when an implied right of action exists under the securities laws, there also is an implied right to contribution.... We intimate no view as to the correctness of these decisions; in any event, they do not support implications of a right to contribution when a statute expressly creates a damages action but does not provide for contribution. [citations omitted].

—— U.S. at ——, n. 11, 101 S.Ct. at 2066, n. 11.

Earlier in the *Northwest Airlines* case, the Supreme Court was faced with an analysis of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2. The Supreme Court found that neither statute supported implication of a right to contribution in favor of the employer, Northwest Airlines, against the Transport Workers Union. In a footnote, once again the securities statutes were distinguished:

> Congress expressly provided for contribution among joint wrongdoers in the Securities Act of 1933, see 15 U.S.C. § 77k(f), and in the Securities Exchange Act of 1934, see 15 U.S.C. §§ 78i(e), 78r(b). Thus, at least in these instances, when Congress wanted to provide a right to contribution, it did so expressly.

A number of federal courts have recognized an implied right to contribution under the securities laws where the underlying liability resulted from an implied private right of action. These courts have reasoned that because Congress expressly created a right to contribution to correspond to certain express civil remedies, contribution should also be permitted when liability is based on an implied civil remedy.... Whatever the merit of this

reasoning, a question we do not now address, these decisions provide no support for petitioner in this case. [citations omitted]. —— U.S. at —— n. 24, 101 S.Ct. at 1580.

Thus far, the Supreme Court has not restricted the implication of contribution rights under the securities laws. Indeed, it declined the opportunity to do so when presented with a certiorari petition in the Ninth Circuit *Laventhol* case. That petition was denied several months *after* the two cases relied upon by Lord Bissell were decided. *See* —— U.S. ——, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). Denial of certiorari in the *Laventhol* case leaves the lingering assumption that rights of contribution may be implied under § 10(b). The LBB defendants have made an impermissible inference from these two cases. Consequently, their second theory is also without merit.

## CONCLUSION

In sum, the LBB defendants have not justified dismissal of the cross-claims against them. On basis of the scant record developed in this proceeding and the prevailing case law, the settling defendants will not be allowed to bow out of the litigation at this point. To do so would be patently unfair to the nonsettling defendants.

Finally, Lord Bissell requests dismissal of the state claims for contribution and indemnification asserted by the non-settling defendants. Because Lord Bissell will remain in the litigation by virtue of the federal claims, the Court sees no reason to reach these pendant claims at this point. Therefore, the Court does not reach the question of whether contribution or indemnification is provided for under the applicable state law or the question of which state law should apply.

Accordingly, it is this 17th day of July, 1981

ORDERED that the motion of Lord Bissell, Meyer and Schauer is hereby denied.