**In re PROFESSIONAL FINANCIAL MANAGEMENT, LTD.—MASTER DOCKET.**

**Civ. No. 4–85–1600.**

United States District Court, D. Minnesota, Fourth Division.

April 12, 1988.

Richard I. Diamond and Linda M. Tedford, Estes, Parsinen & Levy, and Alonzo B. Seran, Olson, Gunn & Seran, Minneapolis, Minn., for plaintiffs.

Thomas J. Shroyer and Beth M. Timm, Moss & Barnett, Minneapolis, Minn., for defendants and third-party plaintiffs Professional Financial Management, Ltd., J. Kmetz & Associates, Joseph Kmetz, and James Kmetz.

Wade R. Wacholz, Gislason, Dosland, Hunter & Malecki, Minneapolis, Minn.,

for defendants Arthur W. Olstead and Olstead & Associates, Inc.

Allen I. Saeks and James G. Bullard, Leonard, Street & Deinard, Minneapolis, Minn., for third-party defendants Mackall, Crounse & Moore, Roger V. Stageberg, and Eric O. Madson.

## MEMORANDUM OPINION
## AND ORDER

DIANA E. MURPHY, District Judge.

The background of this complex litigation, which involves claims related to the "Energy Brain" and "Kiddie Klassics" tax shelter plans, is set forth in the court's April 13, 1987 Memorandum Opinion and Order. On October 27, 1987, almost two years after the original actions were commenced, defendants Professional Financial Management, Ltd., J. Kmetz & Associates, Joseph Kmetz and James Kmetz (the PFM defendants) filed third-party complaints in the four Energy Brain cases and in the three Kiddie Klassics cases.[1] The Energy Brain third-party complaint alleges that attorney Roger V. Stageberg and the law firm of Mackall, Crounse & Moore provided the PFM defendants with legal advice in connection with Energy Brain. The PFM defendants seek contribution or indemnity for any damages awarded to plaintiffs or the Preeshl, Helstad, Shoup & Co. defendants. The complaint asserts claims under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(2); section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder; the Minnesota Securities Act, Minn. Stat. § 80A.01 et seq.; and under a negligence theory.[2] Now before the court

is a motion by MCM to dismiss or to strike all of the third-party complaints.[3]

*Background*

The extent of MCM's involvement with the tax shelter plans is disputed. With regard to Kiddie Klassics, MCM points out that it was not retained until January 1982, after the investors had executed their leases in late 1981. Another firm had represented PFM in 1981 in setting up the Kiddie Klassics arrangements. MCM asserts that it only assisted PFM in preparing responses to inquiries from the Minnesota Department of Commerce in connection with its investigation into Structured Shelters, Inc., one of the promoters of Kiddie Klassics. PFM contends that Stageberg advised Joseph Kmetz not to disclose the state's investigation to the investors and advised PFM to collect the second lease payments in June 1982 despite the investigation. PFM states that it relied upon the advice of MCM with respect to all aspects of the plan after January 1982.

MCM states that it was first approached by PFM in September 1982 concerning the Energy Brain plan. It claims that other law firms had prepared the formal tax and securities opinions concerning Energy Brain. Stageberg says that he spent less than nine hours reviewing the securities aspects of a sales memo used and never rendered a formal securities opinion. PFM contends that Stageberg advised that Energy Brain was not a security required to be registered and that he failed to ensure that the due diligence work done on Energy Brain was adequate.

MCM first moves to dismiss the third-party complaints on the ground that they fail to state a claim upon which relief can

1. On March 15, 1988, the court dismissed without prejudice three of the Energy Brain cases and one of the Kiddie Klassics cases for case management purposes. The remaining Energy Brain case is *Nielsen v. Professional Financial Management, Ltd.,* Civil 4–85–1600, and the remaining Kiddie Klassics cases are *Burns v. Professional Financial Management, Ltd.,* Civil 4–85–1643, and *Betz v. Professional Financial Management, Ltd.,* Civil 4–86–571. The two Kiddie Klassics third-party complaints shall be referred to collectively.

2. The third-party complaint in the Kiddie Klassics actions asserts only a negligence claim and also names as a defendant Eric O. Madson, another attorney with Mackall, Crounse & Moore.

3. At the hearing, counsel for plaintiffs stated that they take no specific position on the motion of the third-party defendants. Although they have not asserted a claim against the third-party defendants, they hope to obtain discovery either here or in a pending state case to determine the possible merit of any such claim.

be granted under Fed. R. Civ. P. 12(b)(6).[4] MCM argues that no right to contribution or indemnity exists under the federal securities law provisions invoked by the PFM defendants, the Minnesota Securities Act, or the negligence theory alleged.

*Discussion*

## A. Federal Securities Law

Counts 1 and 2 of the Energy Brain third-party complaint assert claims for contribution or indemnity under federal securities law. No express right to contribution or indemnity is provided under section 12(2) of the 1933 Act or section 10(b) of the 1934 Act and Rule 10b–5. The PFM defendants argue, however, that implied rights to contribution and indemnity exist under those provisions.

■ Even courts that have found implied rights to contribution have declined to find an implied right to indemnity. In *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979), the Seventh Circuit stated:

> Whereas contribution supports the policy of securities legislation, indemnification tends to frustrate and defeat it. A securities wrongdoer should not be permitted to escape loss by shifting his entire responsibility to another party.

*Id.* at 334; *see also Stowell v. Ted S. Finkel Inv. Serv., Inc.*, 641 F.2d 323, 325 (5th Cir.1981); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 885 (D.N.J. 1984); *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 954–57 (S.D.N.Y.1975). The PFM defendants thus have no right to indemnity under section 12(2) of the 1933 Act or section 10(b) of the 1934 Act.

The PFM defendants' claim for contribution requires separate consideration. The PFM defendants correctly note that a number of courts, including the Seventh Circuit in *Heizer Corp.*, have recognized an implied right to contribution under section 10(b). Since *Heizer Corp.*, the Supreme Court has considered similar arguments for implied rights to contribution under other federal statutes. In *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 94–95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981), the Court held that there was no right to contribution under the Equal Pay Act of 1963 or Title VII of the Civil Rights Act of 1964. In *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639–40, 101 S.Ct. 2061, 2066–67, 68 L.Ed.2d 500 (1981), the Court similarly found no implied right to contribution under the Sherman and Clayton Acts.[5]

The Supreme Court established an analytical framework in these cases that can also be applied to claims for contribution under federal securities law. In both cases, the Court attempted to determine the intent of Congress by examining the legislative history and other factors, including "the identity of the class for whose benefit the statute was enacted." *Texas Indus.*, 451 U.S. at 639, 101 S.Ct. at 2066. The Court had little difficulty concluding that the Sherman and Clayton Acts "were not adopted for the benefit of the participants in a conspiracy to restrain trade." *Id.* Instead, the Court found that the party seeking contribution was " 'a member of the class whose activities Congress intended to regulate for the protection and benefit *of an entirely distinct class.*' " *Id.* (emphasis in original) (quoting *Piper v. Chris–Craft Indus., Inc.*, 430 U.S. 1, 37, 97 S.Ct. 926, 947, 51 L.Ed.2d 124 (1977)). Similarly, the Court found in *Northwest Airlines* that the Equal Pay Act and Title VII had not been enacted for the benefit of employers, one of whom sought contribution from two unions in that case. 451 U.S. at 92, 101 S.Ct. at 1581. The Eighth Circuit Court of Appeals has applied this stan-

---

**4.** MCM stresses that this is a motion to dismiss, not for summary judgment, noting that the additional materials provided "are submitted only to assist the Court in exercising its discretion in ruling on the Motion to Strike under Rule 14(a)." Third-Party Defendants' Brief at 9 n. 9. PFM argues that it is really a motion for summary judgment. Since the court is not considering the materials outside the pleadings, the motion should be regarded as one to dismiss.

**5.** The Court also declined in both cases to create an implied right to contribution under federal common law. *Northwest Airlines*, 451 U.S. at 98, 101 S.Ct. at 1584; *Texas Indus.*, 451 U.S. at 646, 101 S.Ct. at 2069.

dard to claims for contribution under other federal statutes. *Green v. United States Dep't of Labor*, 775 F.2d 964, 971 (8th Cir.1985) (finding no implied right to contribution or indemnity under § 8132 of Federal Employees' Compensation Act).

■ Applying this standard to the federal securities law, the court finds it very unlikely that sections 12(2) and 10(b) were adopted for the benefit of persons who have allegedly engaged in securities fraud. Instead, as in *Texas Industries*, the PFM defendants would be "member[s] of the class whose activities Congress intended to regulate for the protection and benefit *of an entirely distinct class*" if they were found liable and therefore interested in contribution. 451 U.S. at 639, 101 S.Ct. at 2066. This suggests that an implied right to contribution should not be inferred.

In declining to find rights to contribution under the statutes in question in *Northwest Airlines* and *Texas Industries*, the Court noted that Congress knows how to provide expressly for contribution when that is its desire. *See Northwest Airlines*, 451 U.S. at 91 n. 24, 101 S.Ct. at 1580–81 n. 24; *Texas Indus.*, 451 U.S. at 640 n. 11, 101 S.Ct. at 2066 n. 11. The Court relied upon the fact that Congress provided explicit rights to contribution under three remedy provisions of the federal securities laws. *See* section 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f), and sections 9(e) and 18(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(e) and 78r(b). Congress' failure to do so under sections 12(2) and 10(b) suggests that it did not intend to provide for contribution under those sections.

The PFM defendants argue that *Northwest Airlines* and *Texas Industries* each expressly declined to express any view as to whether an implied right of contribution exists under the federal securities laws. *See Northwest Airlines*, 451 U.S. at 91 n. 24, 101 S.Ct. at 1580–81 n. 24; *Texas Indus.*, 451 U.S. at 640 n. 11, 101 S.Ct. at 2066 n. 11. Although the Supreme Court did not issue a ruling with respect to the securities laws in these cases, it nowhere suggested that its analysis was inapplica-

ble to claims of implied rights of contribution under those laws. Moreover, the Court drew a distinction between express and implied causes of action which makes the PFM defendants' claim for contribution under section 12(2) particularly tenuous. The Court "intimate[d] no view as to the correctness of" decisions finding that "when an implied right of action exists under the securities laws, there also is an implied right to contribution." *Texas Indus.*, 451 U.S. at 640 n. 11, 101 S.Ct. at 2066 n. 11. The Court added, however, that these decisions "do not support implication of a right to contribution when a statute expressly creates a damages action but does not provide for contribution." *Id.*

While the private cause of action under section 10(b) and Rule 10b–5 is implied rather than express, section 12(2) of the 1933 Act expressly creates a damages action. Congress explicitly created a cause of action under section 12(2) and was plainly aware of how to create a right to contribution, yet it did not create a right to contribution under that section. In *In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 615–16 (N.D.Ill.1987), the court stated:

> Given that Congress provided the right of action expressly in certain provisions of [the federal securities laws], it seems reasonable ... to assume that if Congress had intended to allow for a right to contribution under one of those provisions Congress would have provided for one expressly.

For this reason, and after applying the factors set forth in *Northwest Airlines* and *Texas Industries*, the court finds that no implied right to contribution exists under section 12(2) of the 1933 Act. The motion of the third-party defendants to dismiss count 1 of the Energy Brain third-party complaint should therefore be granted.

The court also finds that no implied right to contribution exists under section 10(b) of the 1934 Act and Rule 10b–5. The factors identified in *Northwest Airlines* and *Texas Industries* indicate that such a right should

not be implied.[6] Much of the authority relied upon by the PFM defendants predates these decisions.[7] As a policy matter, it is not clear that contribution promotes deterrence, as courts have often stated. *See* Loewenstein, *Implied Contribution Under the Federal Securities Laws: A Reassessment,* 1982 Duke L.J. 543, 573. Because scienter is required for liability under Rule 10b–5, it is also not unfair to deny contribution in such actions. *Id.; see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976) (scienter required under Rule 10b–5). The motion of third-party defendants to dismiss count 2 of the Energy Brain third-party complaint should be granted.[8]

## B. State Law Claims

Count 3 of the Energy Brain third-party complaint asserts a claim for contribution under the Minnesota Securities Act, Minn. Stat. § 80A.01 *et seq.* Count 4 of that complaint and the only count in the Kiddie Klassics complaint assert that MCM performed legal services in a negligent manner, thus entitling the PFM defendants to an award of contribution or indemnity.

The federal securities law claims in the Energy Brain third-party complaint originally provided an independent basis for jurisdiction over the state law third-party claims. Now that the federal claims are to be dismissed, the only basis for jurisdiction over the state claims is under the doctrine of ancillary jurisdiction.[9] The same is true for the negligence claim in the Kiddie Klassics third-party complaint.

Under the doctrine of ancillary jurisdiction,

a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case of which it could not take cognizance were they independently presented. Thus, if the federal court has jurisdiction of the principal action, it also may hear any ancillary proceeding therein, regardless of the citizenship of the parties, the amount in controversy, or any other factor that normally would determine subject matter jurisdiction.

C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3523, at 82 (2d

---

**6.** This conclusion is inconsistent with this court's earlier decision in *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 4–81–394, slip op. at 12 (D.Minn. July 27, 1984) (recognizing a right to contribution). The issue of contribution was not fully developed in that case, however, nor was reference made to the recent Supreme Court decisions on contribution. In the meantime, the Supreme Court has also indicated that claims of securities violations should not necessarily command a federal forum. *See Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987) (permitting enforcement of predispute arbitration agreements under 1934 Act).

**7.** A number of cases decided after the Supreme Court decisions have continued to recognize an implied right to contribution under Rule 10b–5. Many fail to address the decisions, *see, e.g., Alexander Grant & Co. v. McAlister,* 669 F.Supp. 163, 165–66 (S.D.Ohio 1987), while others simply note that the cases are not controlling without applying the Court's standard, *see, e.g., In re National Student Mktg. Litig.,* 517 F.Supp. 1345, 1348–49 (D.D.C.1981). One district court examined the decisions in detail but concluded that it was bound by the Seventh Circuit's decision in *Heizer Corp. In re Olympia Brewing Co. Sec. Litig.,* 674 F.Supp. 597, 616 (N.D.Ill.1987). No

such binding Eighth Circuit precedent on this issue has been identified.

**8.** Even if such a right did exist, it does not appear that the PFM defendants have adequately alleged the joint participation in the fraud necessary for contribution. In *Delta Holdings, Inc. v. National Distillers & Chemical Co.,* [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) § 92,910 (S.D.N.Y.1986) [Available on WEST-LAW, 1986 WL 9790], the court stated:

[A] claim for contribution under § 10(b) and Rule 10b–5 will lie only when there is an allegation that the third-party defendants were joint tort-feasors in the intentional fraud of which plaintiff complains. ... The assertions contained in [the] third-party complaint against the third-party defendants all sound in negligence, gross negligence and recklessness. This does not support a claim for securities fraud under § 10(b) and Rule 10b–5.

*Id.* at 94,426 (citations and footnote omitted); *see also Alexander Grant & Co. v. McAlister,* 669 F.Supp. 163, 166 (S.D.Ohio 1987). The allegations of the third-party complaints here sound more in negligence than in joint participation in intentional fraud.

**9.** The third-party plaintiffs and the third-party defendants are not of diverse citizenship.

ed. 1984) (footnotes omitted). Impleader of a third-party defendant can fall within the court's ancillary jurisdiction. *Id.* at § 3523, at 109–10; *see also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978); *West v. United States,* 592 F.2d 487, 492 (8th Cir.1979).

Before exercising jurisdiction under this doctrine, the court must determine whether it has power to adjudicate the claim and whether that power should be exercised:

> Courts have interpreted [*United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),] as imposing a two-step analysis to determine the propriety of retaining jurisdiction after federal claims drop out of a case. First, a district court must determine if it has the *power* to exercise jurisdiction over the ancillary claims. That determination depends upon whether the federal claim is substantial and whether there is a common nucleus of operative fact for both the federal and state claims. ... [T]he existence of power alone does not imply that the district court should always exercise that power. Thus, the second step in the *Gibbs* analysis is to determine whether to retain jurisdiction, a matter relegated to the exercise of the district court's discretion. In other words, does the retention of jurisdiction serve the interests of "judicial economy, convenience and fairness to litigants"?

*United States v. Zima,* 766 F.2d 1153, 1158 (7th Cir.1985) (emphasis in original); *see also Curtis v. Sears, Roebuck & Co.,* 754 F.2d 781, 784–85 (8th Cir.1985).

█ It is not at all clear that the court has power to consider the state law claims in the third-party complaints. The claims asserted in the main action and the third-party claims do not appear to arise from a "common nucleus of operative fact." The claims brought by plaintiffs against the PFM defendants and other defendants focus on the relationship between the alleged purchasers and sellers of securities. By contrast, the third-party claims do not di-

rectly involve plaintiffs, but concern the relationship between the PFM defendants and their attorneys. The main action involves alleged fraud and issues of scienter; the third-party action involves alleged negligence and issues of reasonable care. Because the claims do not appear to arise from a "common nucleus of operative fact," the court may well not have the power to adjudicate the third-party claims.

Even if that power existed, however, the court finds, as a matter of its discretion, that it should not be exercised under these circumstances. Judicial economy would not be enhanced through adjudication of the third-party claims in this forum. These claims were not brought until almost two years after the first Energy Brain and Kiddie Klassics complaints were filed. Substantial discovery and motion practice has already occurred in the main actions. Consideration of the third-party claims in this forum would require considerable judicial resources and may delay the adjudication of plaintiffs' claims in the main actions. *See Ahern v. Gaussoin,* 104 F.R.D. 37, 41–42 (D.Or.1984) (declining to exercise ancillary jurisdiction over third-party action in complex securities case where third-party complaint not filed until ten months after action commenced and added delay could prejudice plaintiffs). Finally, the third-party complaints present disputed issues of state law, with which the state court is presumed to have greater expertise. This factor also suggests that the court should not exercise ancillary jurisdiction over the third-party claims. *United States v. Zima,* 766 F.2d 1153, 1158 (7th Cir.1985). Under all the circumstances, the court should not exercise ancillary jurisdiction over the third-party actions. They should therefore be dismissed without prejudice.[10]

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. In *Nielsen v. Professional Financial Management, Ltd.,* Civil 4–85–1600, the motion of third-party defendants Mackall, Crounse & Moore and Roger V. Stageberg

---

**10.** In view of these rulings, the court need not address the third-party defendants' alternative

motion to strike the third-party complaints pursuant to Fed.R.Civ.P. 14(a).

to dismiss is granted with respect to counts 1 and 2 of the third-party complaint, and those claims are dismissed. Counts 3 and 4 are dismissed without prejudice.

2. In *Burns v. Professional Financial Management, Ltd.*, Civil 4–85–1643, and *Betz v. Professional Financial Management, Ltd.*, Civil 4–86–571, the motion of third-party defendants Mackall, Crounse & Moore, Roger V. Stageberg, and Eric O. Madson to dismiss is granted, and the third-party complaints are dismissed without prejudice.