Geoffrey **BAKER, et al., Plaintiffs,**

v.

**BP AMERICA, INC., Defendant/Third Party Plaintiff,**

v.

**CIMCAST CORP., Third Party Defendant.**

**Civ. A. No. 90CV0911.**

United States District Court, N.D. Ohio, E.D.

Oct. 23, 1990.

Byron S. Krantz, Joshua R. Cohen, Donald S. Scherzer, Kohrman, Jackson & Krantz, Cleveland, Ohio, for plaintiffs and third party defendant.

Mark J. Valponi, Stephen M. O'Bryan, Kelley, McCann & Livingstone, Cleveland, Ohio, for defendant/third party plaintiff.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Geoffrey Baker, the Hawk Corporation, and Walter Wright brought this securities fraud claim against BP America, Inc., under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5; the complaint also in-cludes pendant state law claims for fraud and breach of contract. BP responded with a counterclaim against the three plaintiffs for contribution, and a third-party complaint against Cimcast Corporation for contribution and indemnification for all but the breach of contract claim. Pending are motions to dismiss BP's counterclaim and third-party complaint. The motions to dismiss BP's contribution claims under § 10(b) and Rule 10b–5 are denied, but the motion to dismiss BP's claim for indemnification from Cimcast is granted. The motions to dismiss those portions of BP's counterclaim and third-party complaint seeking contribution for common law fraud are granted.

## I.

Baker, Wright, and Gary Worner—a BP employee—together formed Cimcast Corporation in May 1988 to acquire BP's Cast Alloy Parts Venture ("the Venture"). Baker, Wright, and Hawk Corporation—an investment group formed to acquire an interest in Cimcast—purchased Cimcast shares. Cimcast successfully acquired the Venture's assets and technology, but the Venture did not prove to be the profitable investment envisioned by the plaintiffs.

BP sold the Venture as part of its corporate efforts to divest itself of holdings outside the petroleum industry. The Venture manufactured commercial metal products known as "custom near-net shape castings", and it claimed to do so by means of a newly developed and technologically advanced process. According to the plaintiffs, BP materially misrepresented the Venture's potential, including information concerning its sales record and the viability of its technology. Allegedly, the principal source of this misinformation was Worner, the BP employee in charge of the Venture. According to the plaintiffs, Worner had first misrepresented these facts to BP in order to prevent BP from abandoning the project, and then continued these misrepresentations to further BP's efforts to find an outside buyer. The plaintiffs contend that they relied upon these misrepresentations in purchasing Cimcast stock. The plaintiffs also contend that BP breached

the "asset transfer agreement" which required BP to convey certain "developed technology" to Cimcast; the plaintiffs contend that such technology did not exist.

BP denies these allegations and contends that any losses experienced by the plaintiffs were the result of their own actions. BP also claims that Cimcast purchased the Venture's assets "as is", without any warranties or representations, and that the plaintiffs are thus barred from seeking compensation from BP for their losses. BP emphasizes that Baker and Wright spent several months on the premises of the Venture's operations, evaluating its potential and soliciting possible investors. In the event it is held liable, BP contends that it would be entitled to contribution from all three plaintiffs and Cimcast. BP argues that the three plaintiffs knew of the "misrepresentations" in seeking investors for Cimcast, and that they therefore should be held liable proportionate to their wrongdoing if there is any judgment entered against BP. BP also seeks contribution and indemnification for Cimcast itself. BP asserts that any liability against it could arise only from misconduct by Worner; according to BP, BP and Cimcast entered into an indemnity agreement whereby, among other things, Cimcast agreed to indemnify BP against claims for any misconduct by Worner. Worner apparently became an employee of Cimcast once BP transferred the Venture's assets. Second, BP claims that Worner was acting as an agent (or *de facto* agent) of Cimcast during the relevant times, and that Cimcast—and not BP— therefore should be held liable for any misconduct by Worner.

## II.

### A.

█ The question of whether contribution is available in a private cause of action brought under § 10(b) of the Securities Exchange Act—and, by extension, Rule 10b–5 —is an open one in the Sixth Circuit. However, the vast majority of courts addressing this issue have concluded that contribution should be allowed. *Smith v. Mulvaney*, 827 F.2d 558, 560 (9th Cir.1987); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 n. 7 (2d Cir.1981); *Stowell v. Ted S. Finkel Investment Services, Inc.*, 641 F.2d 323, 325 (5th Cir.1981); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 556–59 (5th Cir.1981), *aff'd in part, rvs'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Heizer Corp. v. Ross*, 601 F.2d 330, 331–34 (7th Cir.1979); *Wilder v. Williams*, [1989–90 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,776, 1989 WL 159591 (W.D.Pa.1989); *Alexander Grant & Co. v. McAlister*, 669 F.Supp. 163, 165–66 (S.D.Ohio 1987); *Seiler v. E.F. Hutton & Co., Inc.*, 102 F.R.D. 880, 885–86 (D.N.J.1984); *In re National Student Marketing Litigation*, 517 F.Supp. 1345 (D.D.C.1981); *Marrero v. Abraham*, 473 F.Supp. 1271, 1276–78 (E.D.La.1979); *McLean v. Alexander*, 449 F.Supp. 1251, 1266–68 (D.Del.1978), *rvs'd on other grounds*, 599 F.2d 1190 (3d Cir.1979); *Globus, Inc. v. Law Research Service, Inc.*, 318 F.Supp. 955, 957–58 (S.D.N.Y.1970), *aff'd on op. below*, 442 F.2d 1346 (2d Cir. 1971), *cert. denied*, 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971) (*"Globus II"*); *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809, 815–16 (D.Colo.1968), *aff'd in part, vacated in part on other grounds*, 435 F.2d 1223 (10th Cir.1970). These courts recognize that the private cause of action under § 10(b) is judicially created, *see Herman & MacLean v. Huddleston*, 459 U.S. 375, 380, 103 S.Ct. 683, 686, 74 L.Ed.2d 548 (1983); they reason, then, that to recognize a right to contribution is appropriate since Congress provided for contribution in other portions of the securities laws which statutorily establish private causes of action.[1]

---

1. Of the eight private rights of action recognized by the securities laws, three provide for both a private right of action and contribution: § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and §§ 9(e) and 18 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(e), 78r. The plaintiffs

and Cimcast argue, as one district court has concluded, that this fact should be considered neutral at best since Congress did not recognize contribution in more than half of these sections. *Robin v. Doctors Officenters Corp.*, 730 F.Supp. 122, 125 (N.D.Ill.1989). However, it is notable

Contribution promotes a fair and equitable allocation of the plaintiffs' losses among all wrongdoers and prevents a § 10(b) defendant from risking undue liability resulting from arbitrary or tactical decisions by plaintiffs regarding which parties to name as defendants to a lawsuit. Many courts point out that allowing contribution—which distributes liability among wrongdoers in proportion to their culpability—is consistent with the policies behind the securities laws: "[T]he deterrent effect of the judgment is felt by all culpable parties and the protected investor class has available to it a broader source of reimbursement." *Heizer*, 601 F.2d at 332. This reasoning seems proper, and this Court accordingly agrees that contribution should be available in at least some cases arising under § 10(b).

The plaintiffs and Cimcast urge this Court to follow an emerging minority rule which declines to recognize any right of contribution in cases arising under § 10(b). *First Financial Savings Bank v. American Bankers Insurance Co.*, [1989–90 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,824, 1989 WL 168015 (E.D.N.C.1989); *Robin v. Doctors Officenters Corp.*, 730 F.Supp. 122, 123–25 (E.D.Ill.1989); *In re Professional Financial Management, Ltd.*, 683 F.Supp. 1283, 1285–87 (D.Minn. 1988). These cases principally rely on two Supreme Court decisions which declined to allow contribution for other federal private causes of action, *Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), and *Texas Industries, Inc. v. Radcliffe Materials*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). In the first case, Northwest Airlines sought contribution from two unions after a judgment had been entered against it because of pay disparity

between male and female flight attendants, a violation of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 206(d) and 42 U.S.C. § 2000e–2. Northwest brought its own action against the unions and argued that it was entitled to contribution because the illegal pay structure had been part of a collective bargaining agreement with the unions. 451 U.S. at 80–82, 101 S.Ct. at 1575–76. The Supreme Court concluded that Northwest could not claim any right of contribution under either the Equal Pay Act or Title VII. Looking to the text of the statutes and their legislative histories, and emphasizing that the laws were enacted solely to establish statutory rights of employees as against employers, the Court held that, as an employer, Northwest could not be a "beneficiary" of the statutes and was therefore barred from seeking contribution from the unions. 451 U.S. at 91–95, 101 S.Ct. at 1580–82. The Court reached a similar conclusion in *Texas Industries, Inc. v. Radcliffe Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), a case involving the Sherman and Clayton antitrust acts, 15 U.S.C. §§ 1, 4. Texas Industries produced concrete, and one of its customers filed a civil antitrust action against it, alleging that Texas Industries and other concrete manufacturers had entered into a price fixing conspiracy. 451 U.S. at 632–33, 101 S.Ct. at 2062–63. The Supreme Court held that Texas Industries could not seek contribution from the other manufacturers with which Texas Industries had allegedly conspired. Using its *Northwest Airlines* analysis, the Court refused to find a right of contribution, again emphasizing the absence of contribution in the statutory scheme and concluding that antitrust violators were not members of the "class" intended to benefit from the anti-

that Congress provided for contribution for the majority of cases where it probably envisioned multiple defendants. The language of §§ 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(1), 77*l*(2), and § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), suggests that Congress envisioned only a single defendant for cases brought under those sections. Only § 15 of the Securities Act of 1933, 15 U.S.C. § 77*o*, and § 20(a) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78t(a), potentially impose liability on multiple defendants with no right of contribution. *See* Loewenstein, *Implied Contribution Under the Federal Securities Laws: A Reassessment*, 1982 Duke L.J. 543, 550–55. As this case and most of the authority discussed in this opinion amply demonstrate, § 10(b) lawsuits typically involve a myriad of defendants and potential defendants.

trust laws. 451 U.S. at 639–40, 101 S.Ct. at 2066–67.[2] *See also Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (establishing general test to determine whether private right of action should be implied from federal statutes).

The district courts which decline to find any right of contribution under § 10(b) reason that cases such as *Northwest Airlines* and *Texas Industries* preclude them from implying that right absent an express legislative mandate. Moreover, these courts find it inappropriate to allow securities wrongdoers to "benefit" from § 10(b) by shifting part of their potential liability to other wrongdoers by means of contribution. These courts also believe that recognizing a right to contribution, in effect, creates a new substantive right, and they emphasize a perceived trend in Supreme Court case law against implying private rights of action from federal statutes. In addition, some of these courts suggest that contribution may not further the policy of deterrence; instead, the prospect of facing liability for a victim's entire loss creates added incentive for compliance with the securities laws. *First Financial Savings Bank,* [1989–90 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 94,824; *Robin,* 730 F.Supp. at 123–25; *Professional Financial Management,* 683 F.Supp. at 1285–87; *see also In re Olympia Brewing Co. Securities Litigation,* 674 F.Supp. 597, 614–16 (N.D.Ill.1987) (finding this reasoning persuasive although bound by contrary appellate authority); *King v. Gibbs,* 876 F.2d 1275 (7th Cir.1989) (using similar framework to reject implied right of indemnification under § 10(b)); *see generally* Loewenstein, *Implied Contribution Under the Federal Securities Laws: A Reassessment,* 1982 Duke L.J. 543.

This Court does not agree that *Northwest Airlines* and *Texas Industries* bar recognition of a right to contribution in cases arising under § 10(b). First, the Supreme Court expressly reserved judgment on the question of the applicability of its reasoning to § 10(b) cases. *Northwest*

*Airlines,* 451 U.S. at 91 n. 24, 101 S.Ct. at 1580–81 n. 24; *Texas Industries,* 451 U.S. at 640 n. 11; 101 S.Ct. at 2066–67 n. 11. Second, *Northwest Airlines* and *Texas Industries* are fundamentally different from this case. *Northwest Airlines* and *Texas Industries* both dealt with statutory remedies which expressly created a private right of action, at the same time omitting any right of contribution. By contrast, the private right of action under § 10(b) has itself been judicially implied. Finally, the facts of this case do not indicate that BP, which is alleged to be a securities wrongdoer, might unfairly "benefit" because it is allowed to seek contribution. BP suggests that the principal liability toward investors in Cimcast may rest with some or all of the plaintiffs in this lawsuit, as well as with Cimcast itself; if that theory proves to be correct, it would clearly defeat the purposes of the securities laws to allow those parties to escape liability simply because they have defined themselves as "plaintiffs" or because the plaintiffs did not choose to name all possible defendants. In sum, the reasoning of earlier cases allowing contribution continues to be persuasive. *Accord Wilder* [1989–90 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,776 (W.D.Pa. 1989); *Seiler,* 102 F.R.D. at 885–86 (D.N.J. 1984); *Noonan v. Granville–Smith,* 532 F.Supp. 1007, 1008 (S.D.N.Y.1982); *National Student Marketing,* 517 F.Supp. at 1348–49 (D.D.C.1981).

### B.

■ Having determined that contribution is available in at least some cases under § 10(b), this Court must next consider whether any restrictions apply and, if so, whether BP's claims fall within those restrictions. Again, there is a split in authority on this issue and no controlling law in the Sixth Circuit. The majority of courts require joint wrongdoing as a condition of contribution. These courts conclude that contribution in § 10(b) cases is only available among parties who knowingly partic-

---

**2.** Both cases also declined to find a right of contribution under federal common law. *Northwest Airlines,* 451 U.S. at 95–98, 101 S.Ct.

at 1582–84; *Texas Industries,* 451 U.S. at 640–46, 101 S.Ct. at 2067–70.

ipate in the same fraud. *Stowell*, 641 F.2d at 325–26 (5th Cir.1981); *In re Crazy Eddie Securities Litigation*, 740 F.Supp. 149, 152 (E.D.N.Y.1990); *Alexander Grant & Co.*, 669 F.Supp. at 166 (S.D.Ohio 1987); *Greene v. Emersons, Ltd.*, 102 F.R.D. 33, 36 (S.D.N.Y.1983); *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 (S.D.N.Y.1979); *see also Stewart v. American International Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir.1988); *Professional Financial Management*, 683 F.Supp. at 1287 n. 8 (D.Minn.1988). A minority of courts, however, make no such requirement, allowing contribution so long as the parties are concurrently liable for the damages. These courts reason that there is no logical distinction between joint tortfeasors and parties who concurrently but independently cause damage by violating § 10(b); in either case, contribution serves the policy of deterrence by subjecting all wrongdoers to liability while permitting a fair distribution of the damages. *Dept. of Economic Development v. Arthur Andersen & Co.*, 739 F.Supp. 804, 808 (S.D.N.Y.1990); *Eacho v. N.D. Resources, Inc.*, [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,067, 1985 WL 1717 (D.D.C.1985); *Marrero*, 473 F.Supp. at 1277–78 (E.D.La.1979).

This Court need not determine whether joint action is always required to sustain a claim for contribution under § 10(b) since joint action is present in this case. The plaintiffs allege that Worner, BP's employee in charge of the Venture, was one of the chief sources of misrepresentations which ultimately led the plaintiffs to purchase shares in Cimcast. BP's theory is that the plaintiffs and Cimcast, together with Worner, knew the true potential and financial condition of the Venture and, accordingly, if any misrepresentations were made to induce investments, those misrepresentations were made jointly by Worner, the plaintiffs, and Cimcast. In addition, BP claims that Worner was acting as Cimcast's agent even during the times he was still employed by BP.

Since this Court finds that there is a right to contribution under § 10(b), and since joint action is present in this case, the motions to dismiss BP's counterclaims and third-party complaint for contribution under § 10(b) are denied.

## III.

■ BP's third-party complaint against Cimcast for indemnification, which is based on Cimcast's agreement to indemnify BP for any wrongdoing of Worner, cannot withstand Cimcast's motion to dismiss. Again, there is no controlling authority in the Sixth Circuit, but it is undisputed that indemnification is generally unavailable for § 10(b) liability. *See Stewart*, 845 F.2d at 200 (9th Cir.1988); *Heizer*, 601 F.2d at 334–35 (7th Cir.1979); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970) (*"Globus I"*); *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 549 (D.Colo.1989); *Wilder*, [1989–90 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,776 (W.D.Pa.1989); *In re Professional Financial Management*, 683 F.Supp. at 1285 (D.Minn.1988); *Seiler*, 102 F.R.D. at 885 (D.N.J.1984); *Eacho*, [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,067 (D.D.C.1985); *Marrero*, 473 F.Supp. at 1275–76 (E.D.La.1979); *McLean*, 449 F.Supp. at 1267 (D.Del.1978); *Odette v. Shearson, Hammill & Co., Inc.*, 394 F.Supp. 946, 954–57 (S.D.N.Y.1975); *see also Stowell*, 641 F.2d at 325 (5th Cir.1981) (*dicta*). Indemnification, unlike contribution, simply shifts liability from the wrongdoer to a third party because of either an implied or express obligation of the third party. Most courts find indemnification to be inappropriate in § 10(b) cases as a matter of policy, concluding that a securities wrongdoer should not be permitted to shift its responsibility to another party, especially since federal securities laws are designed not only to compensate, but also to regulate.[3]

3. Notably, the Seventh Circuit recently modified its reasons for rejecting indemnification claims under § 10(b), shifting its analysis to one based solely on statutory interpretation and a conclu-

sion that there is no evidence that Congress intended to allow indemnification in claims arising under § 10(b). *King*, 876 F.2d at 1280–

BP points to several decisions which it claims carve out exceptions to the general rule barring indemnification, giving particular emphasis to *Maryville Academy v. Loeb Rhoades & Co., Inc.*, 530 F.Supp. 1061, 1070–71 (N.D.Ill.1981). In that case, the defendant faced possible liability under § 10(b) and Rule 10b–5 for acts committed by one of its employees in concert with several others. The district court concluded that the defendant could seek indemnity from its employee's co-conspirators to the limited degree that its liability would be based on *respondeat superior* rather than its own negligent or intentional misconduct. *Id.* BP also cites other cases which hold that a corporation found vicariously liable for the wrongdoing of its employees under § 10(b) may seek indemnification from the actual wrongdoers who participated in the fraud. *E.g., Thomas v. Duralite Co., Inc.*, 386 F.Supp. 698, 727–28 (D.N.J.1974), *aff'd in part, vacated on other grounds*, 524 F.2d 577 (3d Cir.1975); *deHaas*, 286 F.Supp. at 815 (D.Colo.1968); *see also Arden Way Associates v. Boesky*, 664 F.Supp. 863, 865 (S.D.N.Y.1987) (indemnification generally available under federal securities laws when liability "is merely vicarious or imputed").

Nevertheless, BP is not entitled to indemnity from Cimcast, and this aspect of its third-party complaint must be dismissed. If BP is liable for damages under § 10(b) because of the actions of its employee, it would be improper to allow it to shift that burden to Cimcast under the indemnification agreement. As several courts have noted, liability under § 10(b) requires scienter, or an intent to defraud, *Heizer*, 601 F.2d at 334, *Marrero*, 473 F.Supp. at 1275–76, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); accordingly, if BP is found liable under § 10(b), it will have been actively at fault by definition. If BP is actively at fault, it should not be permitted to avoid liability at the expense of Cimcast.

To the extent that the authority cited by BP has not been preempted by later case law holding that indemnity is generally unavailable under § 10(b), that authority is not on point. In *Thomas* and *deHaas*, the employer sought indemnity from the actual wrongdoers whom it employed; here, however, BP is not seeking indemnity from Worner, but from Cimcast which later employed Worner. Similarly, in *Maryville* the employer sought indemnification from the people with whom its employee had conspired, but BP does not base its claim for indemnification on a theory that Worner conspired with Cimcast to violate the securities laws; the indemnification claim is based solely on a written indemnification agreement executed when Worner left his position at BP for employment at Cimcast. Moreover, *Maryville Academy* appears to have been effectively overruled by subsequent controlling authority for that court. *King*, 876 F.2d at 1280–82 (7th Cir.1989) (finding no implied right of indemnification under § 10(b)).

This result is hardly unfair to BP since this Court is allowing BP's claims for contribution to stand. Any liability by BP may be properly shared if BP can show that either Cimcast or the plaintiffs themselves acted in violation of the securities laws. BP simply cannot avoid liability by the device of indemnification which could allow BP to shift part of its potential liability to Cimcast without a showing of culpability by Cimcast.

### IV.

■ Finally, the Court must consider whether BP may claim either contribution or indemnification if it is held liable under the plaintiffs' pendant state law claim for common law fraud. BP contends that it would be entitled to contribution and indemnification on the state law claim because the plaintiffs have pled only that BP is vicariously liable for a tort intentionally committed by Worner. However, the complaint specifically alleges intentional conduct by BP, and Ohio law bars either contribution or indemnification for intentional torts. O.R.C. § 2307.31(A); *Waldock v. Pittsburgh National Bank*, 720 F.Supp. 610, 611 (N.D. Ohio 1988); *Medina County*

82 & n. 8 (7th Cir.1989); *cf. Heizer*, 601 F.2d at 335.

*Agricultural Society v. Swagler,* 34 Ohio App.3d 336, 337–38, 518 N.E.2d 589, 591 (Medina Co. 1987). In fact, since intent is an essential element of fraud, *see Kasuri v. St. Elizabeth Hospital Medical Center,* 897 F.2d 845, 851 (6th Cir.1990), *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 169, 462 N.E.2d 407, 409 (1984), indemnification or contribution can never be claimed for that tort as a matter of law. Accordingly, the portions of BP's counterclaim and third-party complaint which seek contribution and indemnification for common law fraud must be dismissed.

### V.

Those portions of BP's counterclaim and third-party complaint seeking (1) indemnification under § 10(b) and Rule 10b–5, and (2) contribution and indemnification for common law fraud, are dismissed. The motions to dismiss BP's counterclaim and third-party complaint are in all other respects denied.

IT IS SO ORDERED.